# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

James L. Brooks,

      Plaintiff

v.

Hubbell et al.,

      Defendants

Case No.: 2:23-cv-00757-JAD-BNW

**Order Denying Plaintiff's Motion for Relief from Jury Waiver and Granting in Part and Denying in Part Defendants' Motions for Summary Judgment**

[ECF Nos. 107, 109, 111]

Plaintiff James L. Brooks[1] sues several police officers from the Reno, Sparks, and Washoe County Police Departments, claiming that they used excessive force to effectuate his arrest that led to a trip to the hospital after he was repeatedly hit in the face with the butt of a rifle. Officers Andrew Barba, Julian Castro, Derek Jones, David Tallman, Paul Hubbell, Andrew Hernandez, and Lance Tindell move for summary judgment, arguing that none of their actions violated Brooks's Fourth Amendment rights and, regardless, they are entitled to qualified immunity. Brooks opposes the request and he seeks relief from his waiver of a jury trial, arguing that the untimeliness of his demand for one was inadvertent.

Because both parties agree that Jones, Tallman, and Tindell were not involved in Brooks's arrest, I grant summary judgment in their favor. But there are genuine disputes of material fact about the circumstances surrounding the actions of Barba, Castro, Hubbell, and Hernandez. Because those factual disputes preclude me from determining whether the force used was excessive or ruling on their qualified-immunity request at this stage, I deny their

---

[1] This is not Emmy, Academy Award, and Golden Globe-winning writer-director-producer James L. Brooks, known for *The Simpsons*, *Big*, and *Terms of Endearment*.

motions.  I also deny Brooks's motion for relief from his jury-trial waiver because Ninth Circuit law holds that inadvertence or oversight leading to a failure to make a timely demand for a jury trial is an insufficient basis for a district court to grant such relief.  So this case will proceed to a bench trial on Brooks's excessive-force claim against Barba, Castro, Hubbell, and Hernandez. But first, I order the parties to a mandatory settlement conference with the magistrate judge.

## Background

On the evening of June 7, 2022, members of the Regional Narcotics Unit (RNU), which consists of law-enforcement officers from state and federal agencies,[2] followed Brooks to the Grand Sierra Resort and Casino in Reno, Nevada.[3]  The RNU officers had arranged for a confidential informant to lure Brooks there so they could arrest him.[4]  As Brooks parked his vehicle in the parking lot and walked toward the casino, RNU officers received an order to take him into custody.[5]

Detective Andrew Barba ran up behind Brooks and brought him to the ground.[6]  More RNU detectives then joined Barba in effectuating the arrest of Brooks.[7]  This much the parties largely agree on.  But their accounts of exactly what happened during Brooks's arrest diverge considerably.

---

[2] ECF No. 107-8 at ¶ 3 (declaration of Julian Castro); ECF No. 107-13 at ¶ 3 (declaration of Andrew Barba); ECF No. 109-1 at ¶ 2 (declaration of Andrew Hernandez).

[3] ECF No. 107-9 at 5 (police report authored by David Tallman).

[4] ECF No. 109-1 at ¶ 7.

[5] *Id*. at ¶ 10.

[6] ECF No. 109-7 at 2 (police report authored by Andrew Barba).

[7] ECF No. 107-8 at ¶ 6; ECF No. 108 at 2:07 (Andrew Barba's body-camera footage, manually filed with Clerk of Court).

### A.    The officers' account

The officers' reports describe that, before their arrest of Brooks, surveillance was conducted and other officers observed him engaging in activity consistent with drug transactions.[8]  RNU officers had also received a briefing on Brooks, during which they learned that Brooks regularly carried firearms and had been armed with a handgun during his last arrest.[9] They also learned about Brooks's extensive criminal history and were advised that he had resisted arrest in the past, resorting to physically fighting officers.[10]

Testimony from several of the officers describes that, once Brooks exited his vehicle and started walking toward the Grand Sierra from the parking lot, police vehicles displaying flashing lights and RNU detectives with vests marked "POLICE" approached Brooks.[11]  Barba described that, as he approached Brooks, he yelled, "Police! Get on the ground!"[12] and Brooks "spun around toward [Barba] and took a bladed stance as if he was going to physically fight him."[13] According to Barba's police report, as he tried to take Brooks to the ground, Brooks "immediately attempted to pull away . . . and plunged his left hand under his body towards his

---

[8] *Id.* at ¶¶ 6–7.

[9] ECF No. 107-10 at 2 (police report authored by Paul Hubbell); ECF No. 107-7 at 6.  Brooks makes evidentiary objections to several declarations by the officers, including this one.  I discuss my findings related to these objections *infra* at pp. 8–10.

[10] *Id.*; ECF No. 109-1 at ¶ 4.

[11] ECF No. 107-10 at 2 (police report authored by Paul Hubbell); ECF No. 107-12 at 2 (police report authored by Julian Castro); ECF No. 108 at 1:54; *see also* ECF No. 107-9 at 5.

[12] ECF No. 107-11 at 2 (police report authored by Andrew Barba); *see also* ECF No. 107-12 at 2 (police report by Julian Castro).

[13] ECF No. 109-7 at 3.

1  waistband."[14]  Barba also reported being concerned that Brooks was reaching for a weapon and

2  pinned Brooks to the ground and placed his hand against Brooks's head.[15]

3        Detective Paul Hubbell's police report describes the other detectives struggling with

4  Brooks and "repeatedly ordering Brooks to give them control of his arms."[16]  Hubbell recounts

5  that the other officers did not have control of Brooks and hearing one of the detectives shout,

6  "[H]e's reaching for something!" and "[H]e's got a (unintelligible)."[17]  Hubbell reported fearing

7  that if Brooks "gained access to [a firearm], he may shoot and kill [him] or the other

8  [d]etectives."[18]  Hubbell therefore "struck Brooks on the right side of his face adjacent to his ear

9  with the muzzle of [his] rifle," and when "Brooks continued to resist and not comply," he "struck

10  Brooks with a second jab of the rifle on the right side of his face."[19]  It was then that Brooks

11  stopped resisting arrest.[20]

12     **B.    Brooks's account**

13        Brooks tells a different story.  Brooks described in his verified complaint that, after

14  getting out of his vehicle in the Grand Sierra parking lot, he was "instantly attacked by a bunch

15  of people [whom] [he] later re[a]li[z]ed were cops."[21]  When the officers ran toward him, they

16  told him to get on the ground, but Brooks did not hear anyone announce themselves as police

17

18

---

19  [14] ECF No. 107-11 at 3.

    [15] *Id.*

20  [16] ECF No. 107-10 at 3.

21  [17] *Id.*

    [18] *Id.*

22  [19] *Id.*

    [20] *Id.*

23  [21] ECF No. 5 at 2 (Brooks's verified complaint).

officers.[22]  Rather, he recalled that he "was thrown and tackled to the ground," was "roughly handled," and "was in fear of [his] life."[23]  He also asserts that "[his] [f]ace was held flat on concrete and all of a sudden [he was] bein[g] hit very hard over and over three times with the but[t] of what [he] thought was a shotgun."[24]  In his responses to requests for admissions, Brooks takes the position that he "did not resist arrest."[25]  He also claims in those responses that "while [he] was on the ground being held down and beat [he] was not ever reaching for nothing."[26]

### C.    Video evidence

The officers submitted body-camera footage from Barba and Hubbell in support of their summary-judgment motions.  Footage from Barba's body camera shows Barba exiting his vehicle, running toward Brooks, and yelling "Get on the ground! We're the police!" at approximately 7:40 p.m.[27]  Less than a second after that announcement, Barba brings Brooks to the ground and Brooks exclaims, "What the f—ck?"[28]  The footage shows officers holding Brooks's head to the ground and repeatedly yelling, "Give me your hands!"[29]  An officer hits Brooks in the face with a rifle.[30]  While the officers secure Brooks and put him in handcuffs,

---

[22] ECF No. 115-1 at 3 (Brooks's responses to defendants' requests for admission).

[23] ECF No. 5 at 2.

[24] *Id.*

[25] ECF No. 116-1 at 2 (Brooks's responses to defendants' requests for admission).

[26] *Id.* at 1.

[27] ECF No. 108 at 1:48 (Barba's body-camera footage, manually filed with Clerk of Court).

[28] *Id.* at 1:57.

[29] *Id.* at 1:59–2:09.

[30] *Id.* at 2:09.

Brooks says, "Holy sh—t, what the f—ck did I do?"[31]  Less than a minute later, the officers help Brooks off the ground.[32]  The audio is difficult to make out, but there's no obvious moment when the officers yell that Brooks was reaching for something or had a weapon.

Hubbell's body-camera footage shows this officer running with his rifle to a group of other officers looking toward the ground in a parking lot.[33]  Immediately upon arriving at the scene from his vehicle parked across the parking lot, Hubbell hits Brooks in the face with his rifle.[34]  It later shows blood on the right side of Brooks's face as he is lying on the ground.[35]

**Discussion**

**A.    Legal Standard**

Summary judgment is appropriate when pleadings and admissible evidence "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[36]  "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."[37]  A fact is material if it could affect the outcome of the case.[38]

---

[31] *Id.* at 2:17.

[32] *Id.* at 3:02.

[33] ECF No.110 at 2:38–2:49 (Hubbell's body-camera footage, manually filed with the Clerk of Court).

[34] *Id.* at 2:52.

[35] *Id.* at 3:19.

[36] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)).  The court's ability to grant summary judgment on certain issues or elements is inherent in Federal Rule of Civil Procedure 56.  *See* Fed. R. Civ. P. 56(a).

[37] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

[38] *Id.* at 249.

1    On summary judgment, the court must view all facts and draw all inferences in the light

2  most favorable to the nonmoving party.[39]  So the parties' burdens on an issue at trial are critical.

3  When the party moving for summary judgment would bear the burden of proof, "it must come

4  forward with evidence [that] would entitle it to a directed verdict if the evidence went

5  uncontroverted at trial."[40]  If it does, the burden shifts to the nonmoving party, who "must

6  present significant probative evidence tending to support its claim or defense."[41]  But when the

7  moving party does not bear the burden of proof on the dispositive issue at trial, it is not required

8  to produce evidence to negate the opponent's claim—its burden is merely to point out the

9  evidence showing the absence of a genuine material factual issue.[42]  The movant need only

10  defeat one element of a claim to garner summary judgment on it because "a complete failure of

11  proof concerning an essential element of the nonmoving party's case necessarily renders all other

12  facts immaterial."[43]  If reasonable minds could differ on the material facts at issue, summary

13  judgment is not appropriate because the purpose of summary judgment is to avoid unnecessary

14  trials when the facts are undisputed.[44]

15

16

17

18

---

19  [39] *Kaiser Cement Corp. v. Fischbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

20  [40] *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992)).

21  [41] *Id.*

22  [42] *Celotex Corp.*, 477 U.S. at 323.

[43] *Id.* at 322.

23  [44] *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

**B.      Brooks's objections to defendants' evidence are overruled.**

A party seeking to either support or refute the assertion that a fact is genuinely in dispute must do so with evidence that can be submitted in an admissible form at trial.[45]  Under Rule 56(c)(4), "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Brooks objects to several statements in the officers' declarations as hearsay.[46]  He points to statements that he is a "validated gang member who goes by the moniker 'Gordo" and that "[Brooks's] gang membership includes the Montello street gang and the Surenos prison gang."[47]  He also argues that statements declaring that he was surveilled and observed selling narcotics on multiple occasions are hearsay.[48]  He challenges statements that the officers were provided with Brooks's violent criminal history, his gang history, and history of violence with officers during a previous arrest on the same grounds.[49]  And he objects to some of these statements on the ground that they are improperly authenticated.[50]  All of these objections are premised on the argument that the statements are not admissible in the form presented and therefore may not be considered on summary judgment.

But that is no longer the standard.  The 2010 amendments to Federal Rule of Civil Procedure 56 "eliminate[d] the unequivocal requirements" that evidence must be admissible in

---

[45] *See* Fed. R. Civ. 56(c)(2).

[46] ECF No. 115 at 2–4.

[47] *Id.* at 4.

[48] *Id.*

[49] *Id.* at 3–4.

[50] *Id.*

its present *form* in order to be considered at summary judgment.[51]  Instead, the rule mandates

that the *substance* of the proffered evidence be admissible at trial.[52]  Because the officers'

interview statements can be presented in an admissible form at trial, presumably through live

testimony, I find that these statements can be appropriately considered on summary judgment.[53]

And to the extent that Brooks objects to the officers' recounting of statements told to them by

someone else about Brooks's criminal history, they are not offered for the truth of those

statements but to reflect what the officers were told when preparing for their encounter with

Brooks and the effect that information had on their subsequent actions.  That is not hearsay under

Federal Rule of Evidence 801.

Brooks also objects to any consideration of statements about his criminal history on the

ground that the declarants do not have personal knowledge of the contents of the statements.[54]

He points to the statement that "[a]pproximately two [ ] months before [Brooks's] arrest, ROP

and the Narcotics Unit initiated an undercover investigation of [Brooks] for the sale of illegal

narcotics," arguing that the officers lack personal knowledge of these events.[55]  He also objects

to statements that "[t]he Narcotics Unit utilized undercover law enforcement officers and

confidential informants to investigate Plaintiff for drug crimes" and that, "[i]n the weeks that

followed, the Narcotics Unit conducted surveillance of Plaintiff and observed him sell illegal

---

[51] *Romero v. Nev. Dep't of Corr.*, 673 F. App'x 641, 644 (9th Cir. 2016) (unpublished).

[52] *Id.*; *see also* Fed. R. Civ. P. 56 advisory comm. note to 2010 amendment.

[53] *Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 666 (9th Cir. 2021) ("If the contents of a document can be presented in a form that would be admissible at trial—for example, through live testimony by the author of the document—there mere fact that the document itself might be excludable hearsay provides no basis for refusing to consider it on summary judgment.").

[54] ECF No. 115 at 3.

[55] *Id.*

narcotics on multiple occasions."[56]  But specifics about the investigation of Brooks, including its timing, potential use of undercover informants, and surveillance techniques, are not relevant to my consideration of this summary judgment motion.  What matters at this stage is what the officers knew about Brooks at the time of the arrest and whether their actions in response to that information were reasonable, given the totality of the circumstances.  For that purpose, the declarants have established their personal knowledge.  So I overrule this foundation objection and all other evidentiary objections by Brooks to the defendants' proffered evidence.

**C.    Defendants Jones, Tallman, and Tindell are entitled to summary judgment because they were not involved in Brooks's arrest.**

Both sides agree that Jones, Tallman, and Tindell should be dismissed from the suit because they did not participate in Brooks's arrest.[57]  Tindell had no physical contact with Brooks and was not present during his arrest.[58]  And Jones did not participate in the arrest.[59]  Tallman's only physical contact with Brooks was helping him to his feet after he was handcuffed by the other officers.[60]  Because they were not involved in physically arresting Brooks,[61] there is no genuine dispute that they did not violate Brooks's Fourth Amendment rights.  So I grant their motions for summary judgment.

---

[56] *Id.*

[57] ECF No. 107 at 6; ECF No. 116 at 5.

[58] ECF No. 116-16 at ¶ 4 (declaration of Lance Tindell).

[59] ECF No. 116-15 at ¶ 4 (declaration of Derek Jones).

[60] ECF No. 116-14 at ¶ 6 (declaration of David Tallman).

[61] ECF No. 107 at 6; ECF No. 116-16 at ¶ 4.

**D.    The motions for summary judgment by Barba, Castro, Hubbell, and Hernandez are denied because there are genuine disputes of fact that prevent the court from making a reasonableness determination.**

In his single surviving claim for relief,[62] Brooks alleges that the defendants used excessive force when they arrested him on June 7, 2022.  The Fourth Amendment prohibits police from using force that "is excessive under objective standards of reasonableness."[63]  "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."[64]

### 1.    Triable issues of fact exist about whether the force was excessive.

The parties' conflicting versions of events leave genuine issues of fact about whether the force here was excessive.  Whether an officer's use of force was unconstitutionally excessive depends on "whether it was objectively reasonable 'in light of the facts and circumstances confronting [the officers], without regard to their underlying intent or motivation.'"[65]  To determine reasonableness, the Supreme Court established in *Graham v. Connor* that the "nature and quality of the intrusion on the individual's Fourth Amendment interests" must be balanced with "the countervailing governmental interests at stake."[66]  The Ninth Circuit has cautioned against granting summary judgment on excessive-force claims because "balancing nearly always

---

[62] ECF No. 5 at 3; ECF No. 11 at 7 (dismissing all but Brooks's excessive-force claim).

[63] *Saucier v. Katz*, 533 U.S. 194, 201–02 (2001); *Fontana v. Haskin*, 262 F.3d 871, 879 (9th Cir. 2001) (quotation omitted).

[64] *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 921 (9th Cir. 2001) (quoting *Graham v. Connor*, 490 U.S. 396, 396 (1989)).

[65] *Gregory v. Cnty. of Maui*, 523 F.3d 1103, 1106 (9th Cir. 2008) (quoting *Graham*, 490 U.S. at 397).

[66] *Graham*, 490 U.S. at 396 (internal quotation marks omitted).

1  requires a jury to sift through disputed factual contentions, and to draw inferences

2  therefrom . . . ."[67]

3        "Neither tackling nor punching a suspect to make an arrest necessarily constitutes

4  excessive force."[68]  Instead, to determine whether excessive force was used, courts consider: (1)

5  the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety

6  of the officers or others, and (3) whether he was actively resisting arrest or attempting to evade

7  arrest.[69]  The most important factor is whether the suspect poses an immediate threat to officer

8  safety.[70]

9        The court's reasonableness inquiry is not limited to these three factors, however.  Courts

10 must consider the totality of the circumstances known to the officers at the time of the arrest and

11 weigh the gravity of the intrusion against the government's interest.[71]  Underlying the

12 "objective-reasonableness test is the clear principle that the force used to make an arrest 'must be

13 balanced against the need for force: it is the need for force [that] is at the heart of the *Graham*

14 factors.'"[72]  "The calculus of reasonableness must embody allowance for the fact that police

15 officers are often forced to make split-second judgments—in circumstances that are tense,

16 uncertain, and rapidly evolving—about the amount of force that is necessary in a particular

17

18

19 [67] *Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052, 1056 (9th Cir. 2003); *Liston
20 v. Cnty. of Riverside*, 120 F.3d 965, 976 n.10 (9th Cir. 1997).

   [68] *Blankenhorn v. City of Orange*, 485 F.3d 463, 477, 481 (9th Cir. 2007) (quoting *Graham*, 490
21 U.S. at 396).

   [69] *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011).
22
   [70] *Smith v. City of Hemet*, 394 F.3d 689, 702 (9th Cir. 2005).

23 [71] *Mattos*, 661 F.3d at 441.

   [72] *Blankenhorn*, 485 F.3d at 480 (quoting *Liston*, 120 F.3d at 976).

12

1   situation."[73]  When "material questions exist regarding the circumstances of the [incident]" the

2   court need not—because it cannot on summary judgment—consider whether conduct is

3   objectively reasonable.[74]  The outcome of the objective-reasonableness test here differs sharply

4   based on whose version of events is to be believed.

5

6               **a.    *Brooks's version could lead a reasonable factfinder to find
               excessive force.***

7           Brooks has provided declarations from which a reasonable factfinder could conclude that

8   he was not resisting arrest and not reaching for anything, but he was nevertheless tackled by

9   officers and hit in the face with the butt of a rifle.  In his verified complaint,[75] which I construe

10  as a declaration because it is made under penalty of perjury, Brooks states facts that could

11  support a finding that Barba, Castro, Hubbell, and Hernandez all used excessive force.

12  According to Brooks, Barba forcibly "thr[ew] and tackled [Brooks] to the ground" while Brooks

13  was "not resisting," and Brooks was in "fear of [his] life" as a result.[76]  Hubbell "str[uck]

14  [Brooks] ver[]y hard over the right side of [his] face" as Brooks was held down on the

15

16

---

17  [73] *Graham*, 490 U.S. at 396–97.

18  [74] *See Ting v. United States*, 927 F.2d 1504, 1510 (9th Cir. 1991).

19  [75] A complaint is "verified" if it contains a sworn verification or declares that it is true and
    correct.  *Schroeder v. McDonald*, 55 F.3d 454, 460 n.10 (9th Cir. 1955) (referencing 28 U.S.C.
    § 1746).  Because Brooks's complaint includes a signed statement "declar[ing] under penalty of

20  perjury under the laws of the United States of America" that the contents of the complaint are
    "true and correct," I construe Brooks's complaint as a verified one.  *See* ECF No. 5 at 6.  And,

21  since it is based on personal knowledge and sets forth specific facts admissible in evidence, it
    may be considered in opposition to summary judgment.  *Lew v. Kona Hospital*, 754 F.2d 1420,

22  1423 (9th Cir. 1985) (describing that, for the purposes of Federal Rule of Civil Procedure 56(e),
    "[a] verified complaint may be treated as an affidavit to the extent that the complaint is based on

23  personal knowledge and sets forth facts admissible in evidence. . . .").

    [76] ECF No. 5 at 2.

concrete.[77]  Castro grabbed Brooks's arm during the encounter after Barba was already on top of him[78] and Hernandez was "trying to assist the other officers in gaining control of his arms."[79] Even accepting the largely undisputed fact that the officers had information causing them to believe that Brooks could be armed and resistant to arrest, a reasonable jury could conclude that such a concern should have dissipated when Brooks did not actually resist, did not have a gun, and was being held down by several officers while repeatedly hit in the face with the butt of a rifle.

### b.    *The officers' version could persuade a factfinder that the force was constitutionally appropriate.*

But if the factfinder believes the officers' version of events, the force used may have been reasonable.  According to the officers' sworn declarations, Brooks actively resisted arrest.  When Barba tried to effectuate the arrest, Brooks "immediately resisted."[80]  Castro described Brooks as "already resisting" when Barba tried to arrest him,[81] so "four law enforcement officers went hands on to subdue" Brooks.[82]  Hernandez "gave Brooks multiple commands to give [him] his arm and [Brooks] did not comply."[83]  When Hubbell arrived, "Brooks was located on the ground

---

[77] *Id.*

[78] ECF No. 107-8 at ¶ 6 (declaration of Julian Castro).

[79] ECF No. 109-2 at ¶ 11 (declaration of Paul Hubbell).

[80] ECF No. 107-13 at ¶ 6 (declaration of Andrew Barba).

[81] ECF No. 107-8 at ¶ 6.

[82] ECF No. 107-13 at ¶ 6.

[83] ECF No. 109-1 at ¶ 12 (declaration of Andrew Hernandez).

1 and officers were struggling to gain control of him."[84]  And the officers ordered Brooks to give

2 them his hands multiple times, but Brooks refused.[85]

3        The officers' declarations also describe facts that, if true, support a conclusion that the

4 officers reasonably feared that Brooks threatened their safety.  Hubbell heard one of the other

5 officers shout, "He's got a . . . ." and could not hear the rest of the sentence.[86]  And several

6 officers recounted that Brooks was reaching toward his waistband during the encounter.[87]

7 Castro's declaration confirms that account.[88]  He also described securing Brooks's hand because,

8 after seeing Brooks "grabbing at his waistband," he believed that Brooks was reaching for a

9 weapon.[89]

10       The officers also recount having received information that Brooks had a violent criminal

11 history and frequently carried a weapon, leading them to believe that, if given the opportunity,

12 Brooks would shoot one of them.[90]  Hubbell described that he made a "split-second decision"

13 and hit Brooks in the face with his rifle to "stop him from reaching toward his waist band and

14 subdue him."[91]  This version of events, if believed, could lead a reasonable factfinder to

15 conclude that, because Brooks was resisting arrest and the officers believed he posed an

16 immediate threat to their lives, the force used by the officers was justified.

17

---

18 [84] ECF No. 109-2 at ¶ 11.

19 [85] *Id.*

20 [86] ECF No. 109-2 at ¶ 12.

   [87] *Id.*; ECF No. 107-13 at ¶ 6; ECF No. 109-2 at ¶ 12.

21 [88] ECF No. 107-8 at ¶ 6.

22 [89] *Id.*

   [90] *Id.*; ECF No. 107-8 at ¶ 5; ECF No. 107-13 at ¶ 6; ECF No. 107-15 at ¶ 5 (declaration of
23 David Tallman); ECF No. 109-2 at ¶ 12.

   [91] ECF No. 109-2 at ¶ 12.

### c.    Body-camera footage doesn't break the tie.

Footage from the officers' body cameras does not squarely support or belie Brooks's or the officers' accounts.  It shows the officers wearing vests clearly marked police, but given that the officers were wearing non-uniform pants and shoes, some views seem to support Brooks's assertion that he could not tell from his vantage point that the people who restrained him were police officers.  The video also shows Barba approaching Brooks from behind, so he may not have seen the identifying police clothing then, either.  And it's unclear from the footage if Brooks was actively resisting arrest or reaching for his waistband at any point during the incident.

### d.    The court can't make credibility determinations on summary judgment.

The only remaining evidence is declarations and reports written by Brooks and the officers involved, and who to believe depends on credibility determinations that this court cannot resolve at this stage of the proceedings.[92]  The purpose of summary judgment is "to isolate and dispose of factually unsupported claims,"[93] so if reasonable minds could differ on material facts, summary judgment is inappropriate.[94]  Because these conflicting versions of events create genuine issues of material fact about just what happened during this incident, and whose version will be believed will require a credibility determination that I cannot make on summary judgment, I deny the defendants' motion for summary judgment on the merits of Brooks's excessive-force claim.

---

[92] *Anderson*, 477 U.S. at 255.

[93] *Celotex Corp.*, 477 U.S. at 323–24.

[94] *Warren*, 58 F.3d at 441; *see also Nw. Motorcycle Ass'n*, 18 F.3d at 1471.

**2.    *These genuine factual disputes also preclude the court from adjudicating the qualified-immunity defense on summary judgment.***

Barba, Castro, Hubbell, and Hernandez alternatively contend that qualified immunity shields them from Brooks's claims.  "Because qualified immunity is an immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial."[95]  Qualified immunity shields government officials "from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."[96]  Conduct is immunized if either prong is not satisfied.[97]

The Ninth Circuit has explained that "'whether a constitutional right was violated . . . is a question of fact' for the jury, while 'whether the right was clearly established . . . is a question of law' for the judge."[98]  To show that conduct violated a clearly established law, the plaintiff must prove that, at the time of the misconduct, "the contours of [the] right [were] sufficiently clear that every reasonable official would have understood that what he is doing violates that right."[99]  But "when there are disputed factual issues that are necessary to a qualified immunity decision, these issues must first be determined by the jury before the court can rule on qualified immunity."[100]

---

[95] *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)) (internal quotation marks omitted).

[96] *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011).

[97] *Martinez v. City of Clovis*, 943 F.3d 1260, 1270 (9th Cir. 2019).

[98] *Morales v. Fry*, 873 F.3d 817, 823 (9th Cir. 2017) (quoting *Tortu v. Las Vegas Metropolitan Police Department*, 556 F.3d 1075, 1085 (9th Cir. 2009)).

[99] *Ashcroft*, 563 U.S. at 741 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)) (quotation and brackets omitted); *see Robinson v. York*, 566 F.3d 817, 826 (9th Cir. 2009).

[100] *S.R. Nehad v. Browder*, 929 F.3d 1125, 1140 (9th Cir. 2019) (quoting *Morales*, 873 F.3d at 824).

The officers argue that they are entitled to qualified immunity because "there is no clearly established law that would have placed a reasonable officer in their positions on notice that their conduct was unlawful under the facts and circumstances of this case."[101]  But the significant factual disputes about what that conduct was prevent this court from making that determination here.  Brooks's version of events suggests that the officers violently tackled, piled on top of, and hit Brooks in the face with the butt of a rifle when he was not resisting or reaching for a weapon.  The Ninth Circuit has held that it is "clearly established . . . that an officer violates the Fourth Amendment by tackling and piling on top of a 'relatively calm,' non-resisting suspect who posed little threat of safety without any prior warning and without attempting a less violent means of effecting an arrest."[102]  So answering the factual question of whether Brooks was resisting while the officers tried to effectuate his arrest is essential to determining whether there is clearly established law that would have placed a reasonable officer in their positions on notice that at least some of their conduct was unlawful.  Because the parties' narratives are at odds on genuine issues of material fact, I cannot conclude at this juncture that the officers did not violate clearly established law.  I thus deny the defendants' motion for summary judgment on their qualified-immunity defense.

**E.    Brooks's motion for relief from the waiver of his right to a jury trial fails.**

Brooks also moves for relief from his waiver of the right to a jury trial under Federal Rule of Civil Procedure 39(b).[103]  Brooks filed a pro se complaint on May 31, 2023, on which he

---

[101] ECF No. 109 at 17.

[102] *Andrews v. City of Henderson*, 35 F.4th 710, 719 (9th Cir. 2022) (quoting *Blankenhorn*, 485 F.3d at 481).

[103] ECF No. 111.

did not check the "Jury Trial Demanded" box.[104]  He later retained counsel, and a notice of appearance of counsel was filed on March 29, 2024.[105]  The deadline for Brooks to demand a jury trial was April 17, 2024, or 14 days after the last pleading was served.[106]  But Brooks's counsel missed that deadline.[107]  Brooks ultimately requested a jury trial for the first time on July 1, 2024.[108]

Brooks moves for relief from that jury-trial waiver, arguing that he did not knowingly or voluntarily waive his right to a jury trial and that his waiver "occurred inadvertently because [Brooks] was self-represented at the time he filed the complaint in this case."[109]  He also argues that, because he is currently an inmate at a maximum-security prison, he faced difficulties communicating with his counsel.[110]  And he contends that the court must grant relief from the jury waiver to protect his Seventh Amendment right to a trial by jury.[111]

But the Seventh Amendment right to a jury in civil lawsuits is not absolute; it is waived if the request is not timely made.[112]  And while courts have discretion to grant relief from a waiver, that discretion is narrow.  The Ninth Circuit has held that a district court's discretion "does not permit [it] to grant relief when the failure to make a timely demand results from oversight or

---

[104] ECF No. 5 at 1.

[105] ECF No. 85.

[106] *See* Fed. R. Civ. P. 38(b)(1).

[107] *See* ECF No. 111 at 2.

[108] *Id.*

[109] *Id.*

[110] *Id.*

[111] *Id.*

[112] Fed. Civ. P. 38(d); *Arthur Young & Co. v. U.S. Dist. Ct.*, 549 F.2d 686, 692 (9th Cir. 1977).

inadvertence."[113]  Even a showing that the delay was due to a legal mistake does not "broaden the district court's narrow discretion to grant the demand."[114]

The fact that a party is unrepresented does not change the calculus.  The Ninth Circuit made this point clear in *Zivkovic v. Southern California Edison Company*.[115]  Like Brooks, "Zivkovic argue[d] that his untimely demand for a jury trial should be excused because he filed his complaint pro se and was unaware of the" jury-trial-demand rules.[116]  But the court held that "Zivkovic's good-faith mistake as to the deadline for demanding a jury trial establishes no more than inadvertence, which is not a sufficient basis to grant relief for an untimely jury demand."[117]

While I sympathize with the reasons Brooks provides and understand that he "was under the mistaken belief that a jury trial would automatically be assigned to his case,"[118] I deny his request for relief because Brooks has not shown cause for his failure to request a jury trial beyond mere inadvertence.  Even if I were to grant leniency based on Brooks's pro se status at the inception of this case, the reality is that Brooks retained counsel before his deadline to

---

[113] *Lewis v. Time Inc.*, 710 F.2d 549, 556–57 (9th Cir. 1983) (first citing *Chandler Supply Co. v. GAF Corp.*, 650 F.2d 983, 987 (9th Cir. 1980); then citing *Mardesich v. Marciel*, 538 F.2d 848, 849 (9th Cir. 1976)); *see also Vaxiion Therapeutics, Inc. v. Foley & Lardner LLP*, 2008 WL 11337433, at *4 (S.D. Cal. Nov. 7, 2008) (first citing *Lutz v. Glendale Union High School*, 403 F.3d 1061, 1065 n.4 (9th Cir. 2005); then citing *Russ v. Standard Ins. Co.*, 120 F.3d 988, 989–90 (9th Cir. 1997) (explaining that the Ninth Circuit reads "Rule 39(b) to prohibit district courts from excusing an inadvertent failure to request a jury trial")).

[114] *Pacific Fisheries Corp.*, 239 F.3d at 1003.

[115] *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080 (9th Cir. 2002).

[116] *Id.* at 1087.

[117] *Id.* (cleaned up); *see also Kulas v. Flores*, 255 F.3d 780, 784 (9th Cir. 2001) (holding that a pro se plaintiff waived any right to jury trial for failure to comply with the requirements of Federal Rule of Civil Procedure 38(b)); *Hunter v. Multnomah Cnty. Sheriff's Off.*, 2008 WL 11385604, at *2 (D. Or. Feb. 6, 2008) ("Although [the plaintiff] is unrepresented, he is obligated to know the basic requirements of the law, including the procedural rules that apply.").

[118] ECF No. 111 at 2.

demand a jury trial expired, and counsel blew the deadline too.  Because Brooks has not shown that his failure to make a timely request for a jury trial was due to anything more than inadvertence or mistake, I deny his motion for relief from the jury-trial waiver.  This case will proceed to a bench trial.

### Conclusion

IT IS THEREFORE ORDERED that the motion for summary judgment by defendants Barba, Castro, Jones, Tallman, and Tindell **[ECF No. 107] is GRANTED IN PART AND DENIED IN PART: it is granted only with respect to defendants Jones, Tallman, and Tindell and denied with respect to defendants Barba and Castro.**  So with good cause appearing and no reason to delay, **PARTIAL FINAL JUDGMENT** is entered in favor of defendants Jones, Tallman, and Tindell, and the **Clerk of Court is directed to TERMINATE these defendants from this action**.

IT IS FURTHER ORDERED that the motion for summary judgment by defendants Hubbell and Hernandez **[ECF No. 109] is DENIED**.

IT IS FURTHER ORDERED that Brooks's motion for a jury trial **[ECF No. 111] is DENIED**.

So this case proceeds to a bench trial on Brooks's excessive-force claim against Defendants Barba, Castro, Hernandez, and Hubbell only.  But first, **this matter is REFERRED to the magistrate judge for a MANDATORY SETTLEMENT CONFERENCE**.  The parties' obligation to file their joint pretrial order is STAYED until 10 days after that settlement conference.

_____
U.S. District Judge Jennifer A. Dorsey
November 15, 2024